UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LEON GELFAND,                                          NO. 03-12571 PBS
    Plaintiff

v.

BORIS SORKIN, DAVID GOLDIN
YELENA GOLDIN, HENRY B. WYNN
AND ATLANTIC FISH MARKET, INC.,
    Defendant

DEFENDANTS, DAVID GOLDIN'S AND YELENA GOLDIN'S SUPPLEMENTARY
MEMORANDUM TO MOTION TO DISMISS

INTRODUCTION

As more particularly set forth in the plaintiff, Leon Gelfand's Opposition to the defendants, David Goldin's and Yelena Goldin's (the Goldins) previously filed Motion to Dismiss, the plaintiff has claimed the following salient RICO infractions: (1) that the Goldins through their intentional misrepresentations caused the plaintiff to "invest" $500,000.00 via the Goldins "association" with the defendant, Atlantic Fish Market, Inc. (Atlantic) with the intent to defraud the plaintiff of his money; (2) that the Goldins' predicate acts were numerous and were related and coordinated for the intended purpose of defrauding the plaintiff of his money; (3) that the Goldins' criminal acts occurred over a substantial time beginning in December 2001 and continue today; and (4) that the plaintiff has been denied access to the corporate documents by the Goldins in alliance with the subject RICO defendants. See Plaintiff's Opposition paras. 3, 4, 5 and 9.

For the reasons which follow as well as those set forth in the Goldins'

1

previously filed Memorandum in support of their Motion to Dismiss the plaintiff's Complaint which frivolously seeks to invoke the jurisdiction of this Court under the guise of the RICO statute must be dismissed with prejudice.

## ARGUMENT

I. THE PLAINTIFF BY VIRTUE OF THE ALLEGATIONS AS SET FORTH IN HIS OPPOSITION LACKS STANDING AS A SHAREHOLDER OF ATLANTIC TO BRING AN INDIVIDUAL SUIT ABSENT A PARTICULARIZED INJURY SINCE ANY RICO CLAIM IS AN ASSET OF ATLANTIC

A principal constraint on standing to sue on the part of the plaintiff in this action is the direct/derivative dichotomy with reference to plaintiff's initial investment of $250,000.00 in ten (10%) percent of Atlantic's stock. (Complaint, paras. 38 thru 44) As a corollary of the foregoing issue of standing to sue is that the plaintiff may sue for injury that he alone directly suffers by reason of an alleged RICO violation. If, however, as relevant to the surreal constellation of facts that the plaintiff has alleged in his Complaint the injury which he suffered as an investor of Atlantic was mediated through that entity in which he holds an interest as a stockholder along with the defendants, David Goldin and Boris Sorkin (Sorkin), the derivative injury that the plaintiff has allegedly suffered does not past muster to confer standing unique to the plaintiff. This is a critical component of the proximate cause analysis under Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992).

Accordingly, it is abecedarian that a RICO claim for damage to a corporation is a corporate asset. Roeder v. Alpha Indus., 814 F. 2d 22 (1st Cir. 1987); Sears v. Likens, 912 F. 2d 889 (7th Cir.1990); Warner v. Alexander Grant & Co., 828 f. 2d 1528 (11th Cir.

2

1987); Rand v. Anaconda-Ericsson, Inc., 794 F. 2d 843 (2d Cir.) cert. denied, 479 U.S. 987 (1986) ; Warren v. Manufacturers Nat'l Bank of Detroit, 759 F. 2d 542 (6th Cir. 1985). Consequently, the plaintiff does not have standing to sue for diminution in the value of his stock caused by alleged racketeering activities that harmed Atlantic. Only Atlantic may sue for such damages. The rationale for the foregoing is that it is only the corporation that is "injured in [its] business or property" within the meaning of section 1964 (c). Rylewicz v. Beaton Servs., Ltd., 888 F. 2d 1175 (7th Cir. 1989).

It should be emphasized that the standing rule that stockholders may not bring individual claims under RICO for diminution in the value of the corporation prevails in **all** Circuits that have considered the matter. (emphasis added) Rylewicz v. Beaton Services, Ltd., supra, at 1179; and host of cases cited hereinabove for this proposition.

Thus, stripped of its extraneous and fanciful allegations, it is not even debatable that the gravamen of the facts set forth in the plaintiff's Complaint if taken as true indicate the plaintiff has not suffered any injury to his property **distinct** from the injury suffered by Atlantic and indirectly by the other stockholders. (emphasis added) Leach v. Federal Deposit Ins. Corp., 850 F. 2d 1266 (5th Cir. 1988). More significantly, it is beyond preposterous for any rational person---let alone the plaintiff or his learned counsel--- to contend under any factual RICO scenario that the Goldins through their alleged fraudulent acts would have sought to financially self-destruct by having wiped out their own stake in Atlantic as being principal victims of their own fraud in diminishing the value of both Atlantic's stock (the defendant David Goldin had invested $250,000.00 in Atlantic's stock: Complaint, para. 9) and further jettisoning additional substantial monies in excess of $500,000.00 which they lent to Atlantic for the foreign

venture. Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc., 615 F. Supp. 828 (D.C. Ill. 1985). In short, if the allegations of the plaintiff are to be taken as credible, the Goldins were inextricably and inescapably bound up as principal indirect victims of their own fraud. So too, the Goldins as victims of their own fraud casts considerable doubt---to say the least---on the plaintiff's allegations that the they conspired with and formed an "enterprise" with the other defendants.

In sum, should the plaintiff opt to go forward with this quixotic quest, his remedy, if any, is to commence a derivative action directly. Fed. R. Civ. P. 23.1; Grant Cent. Sanitation, Inc. v. First Nat'l

II.  THE PLAINTIFF'S DEFICIENT ALLEGATIONS OF A "PATTERN" OF "PREDICATE ACTS" OF RACKETEERING ARE DISPOSITIVE OF HIS CLAIM UNDER RICO BEING DISMISSED WITH PREJUDICE

A painstaking word-by-word reading of the facts set forth in plaintiff's Complaint places a real strain on the language to speak of a single fraudulent effort, implemented by several alleged fraudulent acts committed by the Goldins in alliance with the remaining defendants, as connoting a "pattern of racketeering activity." Indeed, the plaintiff has simply alleged several fraudulent acts which he claims proximately resulted in a **single** loss of $500,000.00.

With respect to the foregoing, the plaintiff fails to allege even by inference particularized facts as to the how either of the Goldins (and especially with respect to the defendant, Yelena Goldin) participated in the conduct of the affairs of Atlantic as the alleged RICO "enterprise" so as to have been culpable of participating in a "pattern" of "predicate acts" with respect thereto. Reves v. Ernst & Young, 507 U.S. 170, 183 (1983)

4

("A defendant's participation must be in the conduct of the affairs of a RICO enterprise, which ordinarily will require some participation in the operation or management of the enterprise itself.") And since the plaintiff's Complaint further fails to contain factual allegations that would at least lead to the conclusion that **each** of the Goldins were actually involved in directing the affairs of the enterprise, dismissal is appropriate since the test is not involvement but control. Reves, 507 U.S. at 184, supra. Simply, performing services for an enterprise, even assumedly with the knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under section 1962(c); instead the individual must have participated in the operation and management of the enterprise itself. Goren v. New Vision Int'l, Inc, 156 F. 3d 721, 728 (7th Cir. 1998); United States v. Oreto, 37 F. 3d 739, 750 (1st Cir. 1994), cert. denied, 513 U.S. 1177 (1995), quoted with approval in MCM Partners v. Andrews-Bartlett & Assocs., 62 F. 3d 967, 978 (7th Cir. 1995).

    Equally availing is that the concept of a "pattern" is essential to the operation of the RICO statute.....Thus, the target of Title IX is by no way or constrained interpretation sporadic activity as alleged by the plaintiff with respect to the Goldins. The infiltration of a legitimate business normally requires more than one "racketeering activity" and the threat of **continuing activity** to be effective. It is this factor of **continuity plus relationship** which combines to produce a pattern. S. Rep. 91—617, 91st Cong., 1st Sess. 159 (emphasis added). Accordingly, it is difficult to see how the threat of continuing activity stressed in the Senate Report could be established by a single criminal episode or scheme as alleged by the plaintiff. Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc., 615 F. Supp. 828 (D.C. Ill 1985).

If the plaintiff's allegations are to be taken as true, all of the facts set forth with respect to the Goldins' alleged nefarious acts of common law fraud in complicity with the remaining defendants which form the basis for the RICO Count were in essence in furtherance of a one **single** scheme or predicate act to defraud him of $500,000.00. (Complaint, paras. 1 thru 64) But the plaintiff has jumped the tracks when he elides the separate statutory requirement of a "pattern" by simply equating multiple acts with that requirement. Racketeering acts do not constitute a pattern simply because they number two or more. Roeder v. Alpha Industries, Inc., 814 F. 2d 22 (1st Cir. 1987) at 30. Individual acts must amount to more than one criminal scheme because otherwise there is no threat of "continuing activity." Roeder v. Alpha Industries, supra, at 31 citing Superior Oil Co. v. Fulmer, 785 F. 2d 252, 257 (8th Cir. 1986). In sum, RICO is not aimed at the isolated offender. Sedima, S.P. R. L. v. Imrex Co., 105 S. Ct at 3285, n. 14 (quoting 116 Conf. Rec. 35193 (1970) (statement of Rep. Poff).

Nor for that matter can it be argued that the acts attributable to the Goldins as part of a "pattern" of racketeering constituted "predicate acts" as defined in section 1961(1).

Under conventional conspiracy analysis, the act of conspiring means agreeing to "facilitate ....acts leading to the substantive offense." Salinas, 522 U.S. at 65. However, the Goldins' alleged preliminary or underlying conduct which merely facilitated or culminated in the predicate act of securities fraud by means of wire fraud, is too remote to permit recovery under section 1964 (c) within the proximate cause precepts of Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992).

In sum, the essence of the plaintiff's RICO claim consists of an alleged securities fraud scheme constituting a single predicate act (see sec. 1961 (1) (D) the proximate

6

cause of which lured him he claims into wiring large sums of monies in foreign commerce and causing him to suffer one basic injury. Cf. Ghouth v. Conticommodity Services, Inc., 642 F. Supp. 1325 (N.D. Ill. 1986). That is the sole "predicate act" for which the plaintiff further claims the Goldins implemented in several steps through a number of fraudulent acts of communication. See Roeder v. Alpha Industries, Inc., supra, at p. 31 citing Superior Oil Co. v. Fulmer, 785 F. 2d at 257; Eastern Corporate Fed. Credit Union v. Peat, Marwick, Mitchell & Co., 639 F. Supp. 1532, 1535 (D. Mass. 1986).

Since pursuant to the foregoing analysis, a pattern requires at least two acts of racketeering activities or predicate acts (sec. 1961(5), the facts alleged by the plaintiff are insufficient as a matter of law under the RICO statute to state a claim for which relief can be granted.

In the alternative, even assuming arguendo, that the Goldins' alleged common law fraudulent acts of communication (Miranda v. Ponce Fed. Bank, 948 F. 2d 41 (1st Cir. 1991) proximately resulted in the plaintiff making two separate investments ---one in Atlantic and the other in O U Watkins---these two isolated predicate acts of racketeering activity without more do not constitute a "pattern." See Section 1961(5); Northern Trust Bank/O'Hare, N.A. v. Inryco, Inc., 615 F. Supp. 828 (D.C. Ill. 1985). As noted in H.J. Inc. v. Northwestern Bell Tel. Co., 829 F. 2d 648 (8th Cir. 1987), rev'd 492 U.S. 229 (1989), predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the RICO requirement as Congress was concerned with "long-term criminal conduct." Cf. Plaintiff's Opposition, Exhibits E thru G.

In sum, since all predicate acts are enumerated in section 1961(1) and no unenumerated acts can constitute a predicate offense, regardless how similar they may be to any specified offense (Miranda, supra), the plaintiff's Complaint must also fall even under this alternative line of reasoning.

III. ALL RELEVANT BOOKS AND RECORDS OF ATLANTIC HAVE BEEN AVAILABLE TO THE PLAINTIFF FOR HIS INSPECTION IN HIS CAPACITY AS A STOCKHOLDER AT ALL RELEVANT TIMES

The Goldins will make short shrift of the literally off-the-wall claim by the plaintiff that as part of an alleged fraudulent scheme under sec. 1961(1)(D) that he has been denied access to the books and records of Atlantic for his examination so that he may obtain an accounting. See: Plaintiff's Opposition, para. 9; and Plaintiff's Complaint, Count II, p. 15. However, the facts belie such a hollow allegation and unblushing lie. Indeed, the plaintiff was afforded full and complete access to the books and records of Atlantic at its premises on at least **five** separate occasions by way of correspondence after he initially through constable service requested to be provided such information (See Exhibits 1 through 6). In lieu of conducting such an examination, the plaintiff instead for some questionable reason chose to file the present baseless action alleging that the Goldins along with the remaining defendants engaged in a pattern of criminal activity culminating in stock fraud through a series of wire transfers under the RICO statute and by means of subsequent obstructionist tactics have denied him such access to the books and records of Atlantic. See Plaintiff's Opposition, Exhibit D, para. 43 ("I later requested documents and an accounting from Atlantic Fish. I received a letter in return from an attorney who told me I was not allowed to talk to anyone in Atlantic Fish or their relatives."); para. 44 (" I **never** received an accounting of any of the documents."); and

Exhibit J, Affidavit of Robert C. Horgan, Esquire, para. 9 ("To my knowledge, the requested corporate documents were **never** produced by any defendant in this case.") (emphasis added)

The foregoing statements set forth in Affidavits by both the plaintiff and by a member of the bar who has information in his file (Exhibits 2 thru 6) which is diametrically opposed to such assertions is nothing less than a fraud upon this Court for the reason that it constitutes less than honest dealing with the Court to intentionally create a false and misleading record. See 7 James Moore, Federal Practice sec. 60.33 at 513 (1971): [W]hile an attorney "should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates of fraud upon the court." (emphasis added) ; Kupferman v. Consolidated Research and Mfg. Corp., 459 F. 2d 1072, 1078 (2d Cir. 1972).

Accordingly, the plaintiff in alliance with his counsel should not be permitted to utilize and attempt to manipulate the judiciary to subvert the legal process in this intolerable manner. Toscano v. Commissioner, 441 F. 2d 930 (9th Cir. 1971).

### RELIEF SOUGHT

The facts are clear from the parties' submissions. The legal principles the Goldins argue are plain. They respectfully request that for all of the foregoing reasons together with the arguments set forth in their previous filed Memorandum in Support of Motion to

Dismiss that the plaintiff's Complaint be dismissed with prejudice and that Rule 11 sanctions be appropriately imposed.

DAVID GOLDIN AND YELENA GOLDIN,
By their attorney:

Neal Marshall Brown, Esquire
185 Lincoln Street
Hingham, Ma 02043
(781) 740-2744
BBO # 548 119

10