UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LEON GELFAND,

    Plaintiff

v.

BORIS SORKIN, DAVID GOLDIN
YELENA GOLDIN, HENRY B. WYNN
AND ATLANTIC FISH MARKET, INC.,

    Defendant

NO. 03-12571 PBS

### DEFENDANT, HENRY B. WYNN'S SUPPLEMENTARY MEMORANDUM TO MOTION TO DISMISS
### Fed'l. R. Civ. P. 12(b)(1) and (6)

**Justice is truth in action.**
> Benjamin Disraeli, Lord Beaconsfield
> (Speech, Feb. 11, 1851)

Plagiarized to:
**Justice is but truth in action.**
> Louis D. Brandeis
> (1914)

### INTRODUCTION

If the foregoing maxims (one of which is etched in granite as the centerpiece of this imposing edifice) have any meaning this Court will achieve justice in appropriately dismissing the instant action with alacrity and dispatch.

Simply stated the essence of the plaintiff's Complaint is that the defendant, Henry B. Wynn (Wynn) who is a likely target in view of his initial two year and ongoing suspension from the practice of law was a **"central figure"** in the scheme to defraud

1

Gelfand of his money (Plaintiff's Opposition, Clause A, p. 9) and that the plaintiff was allegedly defrauded by the collective acts of the defendant, Wynn, assumedly as the "consigliere" of the criminal enterprise, acting with and in concert with the individual defendants, Boris Sorkin (Sorkin), David Goldin (Goldin), Yelena Goldin (Dr. Goldin) and Atlantic Fish Market, Inc. (Atlantic) by virtue of the plaintiff being caused to wire monies in foreign commerce which used Wynn's "disguise as corporate counsel" [for Atlantic] "to cast a shroud of credibility on the fraudulent scheme." Plaintiff's Opposition, Conclusion, p. 13. The plaintiff further claims that "What is **clear**........is that Wynn pursuant to Justice Greaney's Order, was **not permitted to work as a paralegal** for Attorney Zyfers or **Zizza**. Id. at p. 13. (emphasis added).

In sum, the plaintiff's central argument is that the individual defendants allied themselves with each other as part of a purported securities fraud scheme whereby the plaintiff was fraudulently induced by wire transfers to invest in the purchase of stock in Atlantic, a Massachusetts corporation and O U Watkins (Watkins), an Estonian corporation.

## PRELIMINARY STATEMENT

In view of the foregoing reckless and outright fabricated statements regarding the alleged manner in which Wynn was held out as "corporate counsel" for Atlantic and that he was further a "central figure" in the scheme to defraud the plaintiff of his monies, it is regretful, that in addressing a 12(b)(6) motion, that we must accept all well-pleaded facts as true and accord the plaintiff the benefit of all reasonable inferences (LeBlanc v. Great Am. Ins. Co. 6 F. 3d 836, 841 (1st Cir. 1993) no matter how surreal or Kafkaesque as applicable to the facts alleged in the relevant Complaint under consideration.

Suffice to say, in juxtaposition to the rule set down in LeBlanc, supra, what is not true, as everyone knows, is always immensely more fascinating and satisfying to the vast majority of men than what is true [no matter how absurd or inane]. Indeed, truth it would appear has a harshness that alarms and an air of finality that collides with the human infliction of incurable romanticism [and the desire to be entertained]. H. L. Mencken, Last Words.

Fortunately, in the main argument that follows the final act of this litigation tragedy and complete waste of judicial resources is about to come to a close.

## ARGUMENT

I. **LEGISLATION ENACTED IN 1995 BY CONGRESS DELETED SECURITIES FRAUD AS A PREDICATE ACT FOR A RICO VIOLATION EXCEPT AGAINST A PERSON WHO IS CRIMINALLY CONVICTED IN CONNECTION WITH FRAUD**

By way of a preliminary comment, the Court should take note of the fact that the plaintiff's allegations fail to allege even a "pattern" since the activities which form the basis of the RICO count allegedly transpired for a limited period of only approximately at most 7 months from the end of January 2002 to the middle of July 2002. Plaintiff's Opposition, II, Relevant Facts, p. 5. See Vicom, Inc. v. Harbridge Merchant Services, Inc. 20 F. 3d 771 (7th Cir. 1994) (Congress was concerned in RICO with long-term criminal conduct); United States Textiles v. Anheuser-Busch Co., 911 F. 2d 1261, 1267 (7th Cir. 1990) (quoting H. J., Inc., 492 U.S. at 237, 109 S. Ct. at 2899); Feinstein v. RTC, 942 F. 2d 34 (1st Cir. 1991) (two years closed-ended period of predicate acts not deemed substantial for RICO purposes).

More importantly whether the alleged scheme was open-ended or closed-ended,

3

as a matter of law, the plaintiff cannot possibly maintain the present action the essence of which sounds in securities fraud by attempting to artfully circumvent 18 U.S.C.A. sec. 1694(c) by alleging conduct constituting wire fraud (Plaintiff's Opposition: Clause E, p. 12). See Krear v. Malek, 961 F. Supp. 1065 (E.D. Mich. 1997); in accord: Baker v. Pfeifer, 940 F Supp. 1168 (S.D. Ohio 1996); Metz v. United Counties Bancorp, 61 F. Supp. 2d 364 (D.C. NJ. 1999); Burton v. Crest Servs., 127 F. Supp. 2d 673 (2001 ED Pa); Clark v. Robert W. Baird Co., 142 F. Supp. 2d 1065 (ND Ill 2001); Louros v. Cyr, 175 F. Supp. 2d 497 (SD NY 2001).

Accordingly, it is nose-on-the-face plain that securities fraud or wire fraud which is inextricably bound up in such fraud no longer serves as predicate acts for a RICO claim in light of the Private Securities Litigation Reform Act of 1995 (PSLRA).

Section 107 of the PSLRA amends 18 U.S.C. 1964(c) to read as follows:
Any person injured in his business or property by reason of a violation of section 1962 of this Chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee, except that no person may entirely rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of 1962. **The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.**

4

18 U.S.C. 1964(c) (amended text emphasized). <u>See</u> Section 107 (Publ. L. No. 104-67, 109 Stat. 737, 758 (Dec. 22, 1995).

The House Conf. Rep. No. 104-369 states in relevant part:

The Conference Committee amends section 1964(c) of title 18 of the U.S. Code to remove any conduct that would have been actionable as fraud in the purchase or sale of securities as racketeering activity under civil RICO. The Committee intends this amendment to eliminate securities fraud as a predicate offense in a civil RICO action. In addition, the Conference Committee intends that **a plaintiff may not plead other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud.** (emphasis added) <u>Id.</u> at 47.

The Senate Committee Report contains identical language regarding the Congressional intent. <u>See</u> P.L. 104-67, Private Securities Litigation Reform Act of 1994, Senate Report No. 104-98 (June 19, 1995).

As such, it is abundantly clear that Congress intended that conduct constituting wire and mail fraud not form the basis of a predicate act under the amendment if such conduct would be actionable as securities fraud. <u>Krear v. Malek</u>, 961 F. Supp. 1065 (E.D. Mich. 1997) and <u>host of cases</u> cited <u>supra</u> for this proposition.

Indeed, as a trenchant precursor to the foregoing amendment, it was Chief Justice Rehnquist who stated: "Virtually everyone who has addressed the question agrees that civil RICO is now being used in ways that Congress never intended when it enacted the statute in 1970. Most of the civil suits filed under the statute have nothing to do with organized crime." (quoting Rehnquist, <u>Reforming Diversity Jurisdiction and Civil RICO,</u>

5

St. Mary's L.J. 5, 9 (1989); and see also 141 Cong. Rec. H2773-74 (Statement of Rep. McCollum) (stating that "Congress never intended for the RICO statute to be used as the principal means of litigating disputes over securities transactions. The securities laws themselves provide aggrieved buyers and sellers with private causes of action so that they may seek compensation for their losses......"); and see 141 Cong. Rec. H2775 (Statement of Rep. Fields) (stating that "......we enacted civil RICO many years ago to provide private citizens with a weapon against organized crime and racketeering. We did not intend RICO to be a supplement to the Federal securities laws. We never intended to give trial lawyers treble damages in these types of civil lawsuits. Nonetheless, unless we adopt this amendment, plaintiffs' attorneys will use RICO to evade our efforts of reform.")

Accordingly, since nowhere in the record has the plaintiff further asserted nor for that matter hallucinated that that any of the defendants have been previously convicted of RICO crimes which are germane or have even a distal nexus to the present action (save any of the defendants having been found culpable of a misdemeanor violation for a speeding infraction committed on the way to Atlantic's premises), his Complaint must be dismissed since the RICO claim does not fall within the exception set out by the United States Congress. See 18 U.S.C.A. section 1964 (c).

II. **THE FRAUD UPON THE COURT WHICH THE PLAINTIFF HAS COMMITTED IN ALLIANCE WITH HIS COUNSEL MANDATES NOTHING LESS THAN A COMPLETE DENIAL OF ALL RELIEF PRAYED FOR IN ALL COUNTS OF THE COMPLAINT**

The defendant, Wynn, is quite mindful of the fact that in the event the RICO

count is dismissed pursuant to Fed'l R. Civ. P. Rules 12(b)1) and (6) that this Court is without further authority it would appear with respect to ruling upon the remaining counts which are no predicate for federal jurisdiction. However, since the complete record thus far indicates that the plaintiff in alliance with his counsel and his prior counsel, Attorney Robert C. Horgan (Attorney Horgan) have recklessly indulged if not wallowed in a runaway pattern of deliberate and incomplete disclosures as well as the submission of perjurous affidavits (See Affidavits of Leon Gelfand and Attorney Horgan dated respectively March 16 and 15, 2004 ) it is suggested that this Court can act decisively to remedy the fraud. Indeed, once fraud is found, a court may deny **all** relief regardless of the merits of the party's claim. See Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238 (1944) and its progeny Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575 (1946).

Indeed, the Supreme Court has reminded us, in the context of extraordinary writs, that two questions confront this Court as it is asked to take "extraordinary measures" to achieve justice and dismiss the plaintiff's entire Complaint with prejudice. The first is the "naked power" to grant relief, and the second is the basis for exercising that power. LaBuy v. Howes Leather Co., 352 U.S. 249, 255 (1957).

The Court's power in this case it is submitted comes from express Congressional grant and the inherent powers of all federal courts, and is necessarily implied from granted powers.

Although relevant "badges of fraud" in the form outright falsehoods and distortions of the facts are present in this case it would not serve any purpose at this time to respond to each and every particularized transgression. That will be deferred to another

7

day in a more appropriate forum. For purposes of this Memorandum the defendant, Wynn, would simply set forth a sampling of some of the more salient and egregious misrepresentations.

The plaintiff has unequivocally represented subsequent to his counsel making an alleged reasonable inquiry and investigation as mandated by Fed'l R. Civ. P. 11 that "What is **clear**.....is that Wynn, pursuant to Justice Greaney's Order, was not permitted to work as a paralegal for Attorney Zyfers or Zizza." (Plaintiff's Opposition, Conclusion, p. 13) However, the record clearly demonstrates that as early as the date of February 26, 2001 and continuing through the present date the defendant, Wynn, who was not "disbarred" (Plaintiff's Opposition, Clause C, p. 11) but rather received a two year suspension, pursuant to an Order of the Supreme Judicial Court entered on March 5, 1999, was permitted by the Office of Bar Counsel to engage in such paralegal employment with Attorney Zizza. Exhibit A. In the same vein, and completely diametrically opposed to the statement made by Attorney Horgan on March 15, 2004 in his Affidavit, para. 3 (Plaintiff's Opposition, Exhibit B), the defendant, Wynn, as relevant to the facts of the instant case, never represented himself as either an "attorney" on the telephone to Attorney Horgan or to any other individual at any other time including the plaintiff (Gelfand Affidavit, para. 23), or represented himself as a member of the bar of the Commonwealth of Massachusetts or for that matter represented himself as "corporate counsel" to Atlantic. With respect to the foregoing, none of the remaining named defendants based upon facts that the defendant, Wynn, is personally aware of at the present time ever represented to the plaintiff or anyone else that Wynn was either an attorney or corporate counsel for Atlantic. Cf. Plaintiff's Opposition, II Relevant Facts, p.

8

2. On the contrary, Attorney Horgan in each and every piece of correspondence directed to the defendant, Wynn, addressed him as "**Mr.** Henry B. Wynn" (Exhibit B), indicative of both the mind set of Attorney Horgan pursuant to the representations made by the defendant, Wynn, at the outset and throughout his brief dealings with Attorney Horgan in representing himself as a paralegal working part time as an administrative assistant at Atlantic (Exhibit C) and otherwise at all times working under the supervision and direction of Attorney Zizza in response to Attorney Horgan's suggested modifications to the so-called stock purchase agreement and related documents relative to which Attorney Gerald J. Zyfers was the principal draftsman.

Notwithstanding the foregoing stubborn facts, the plaintiff further nonsensically alleges in his Opposition (Conclusion, p.9) that the defendant, Wynn, was no less than a "central figure" in the scheme to defraud him. With respect to the plaintiff's purchase of additional shares in Watkins through the wiring of additional funds to various Estonian corporations (Plaintiff's Opposition, II, Relevant Facts, p. 5), at no time until most recently was the defendant, Wynn, even remotely aware of any of such foregoing facts and learned of the purchase of additional stock in Watkins only from the defendant, Boris Sorkin (Sorkin) during the fall of 2003 after he was provided upon his request with a copy of the relevant Agreement between the plaintiff and Watkins by Sorkin. Exhibit D. Even a cursory reading by plaintiff's counsel of the Agreement between his client and Watkins (Exhibit D) on its face would have plainly indicated that the relevant document was both drafted in Estonia and executed in **Tallin**, the capital of Estonia on the date of **April 30th 2002** by the plaintiff and principal parties to that transaction and

9

that not under any possible scenario could the defendant, Wynn, have been even a distant participant, let alone a "central figure", in any scheme to defraud.

With respect to such Agreement (Exhibit D) on or about October 20, 2003 Attorney Horgan was placed on notice by the defendant, Wynn, (See Exhibit E), of the existence of the foregoing document which clearly and unequivocally evidenced by the words utilized by the unknown draftsman especially with respect to the monetary aspects of the transaction and reference to the laws of Estonia that the document could only have been the subject of negotiations and authored in Estonia.

More significantly, as both the plaintiff and his counsel of record and Attorney Horgan have at all relevant times been well aware of relative to the facts of the instant case, the principal parties to this action in **all** of their course of dealings which mainly took place in Estonia invariably confined their communications in the Russian language and that the defendant, Wynn, neither speaks, writes nor reads Russian nor for that matter Estonian.

Given the foregoing circumstances, it is completely preposterous as well as ludicrous for the plaintiff's counsel to have filed as part of the Plaintiff's Opposition (Clause A, p. 9) that the defendant, Wynn was a "central figure" in an alleged racketeering scheme to defraud the plaintiff of his monies. Indeed, the defendant, Wynn's passport will show that he has never at anytime been in either Estonia, Russia or any of the remaining two Baltic countries at any time (except perhaps through the pedigree of his ancestors who came to this country in 1895) and that he could not possibly have been an alleged "central figure" in connection with the plaintiff having been allegedly defrauded relative to a series of transactions which for the most part **all**

took place in Tallin, Estonia involving several Estonian corporations in connection with a seemingly myriad number of transactions relating to a parcel of real estate located in that country.

## RELIEF SOUGHT

For all of the foregoing reasons, it is respectfully submitted that the plaintiff's Complaint must be dismissed with prejudice at a minimum with respect to the RICO count and with respect to the remaining counts as well.

Signed this 14th day of April 2004 under the pains and penalties of perjury.

HENRY B. WYNN

Henry B. Wynn, pro se
33 Pond Avenue
Brookline, Ma 02445
(617) 739-9005