UNITED STATES OF AMERICA

| | |
|---|---|
| DISTRICT OF MASSACHUSETTS | U.S. DISTRICT COURT<br>No. 03 12571 PBS |

**LEON GELFAND,**
        **Plaintiff,**

*vs.*

**BORIS SORKIN, DAVID GOLDIN, YELENA GOLDIN, HENRY B. WYNN, and ATLANTIC FISH MARKET, INC.,**
        **Defendants**

**PLAINTIFF'S OPPOSITION TO DEFENDANTS, DAVID GOLDIN'S AND YELANA GOLDIN'S MOTION TO SUBMIT SUPPLEMENTAL MEMORANDUM TO PLAINTIFF, LEON GELFAND'S OPPOSITION TO DEFENDANTS, DAVID GOLDIN'S AND YELANA GOLDIN'S <u>MOTION TO DISMISS</u>**

Now comes the Plaintiff, Leon Gelfand ("Gelfand"), in the above-captioned matter and hereby respectfully requests that this Honorable Court deny the Defendants, David Goldin's and Yelena Goldin's Motion to Submit a Supplemental Memorandum in response to Gelfand's Opposition to the Defendants' Motion to Dismiss.

As reasons thereof Gelfand states as follows:

1. The Defendants' counsel, as he has done in <u>each</u> and <u>every</u> motion he has filed in this matter, has violated Local Rule 7.1(A)(2) by failing to certify that he has conferred with Plaintiff's counsel.

2. Defendants' counsel's failure to comply with Rule 7.1(A)(2) is intended to gain unfair procedural advantage.

3. Defendants' Certificate of Service is misleading in that the "hand-delivered" motion and memorandum was not in fact delivered until 5:20 p.m., Friday of Easter weekend.

4. In fact, <u>each</u> and <u>every</u> motion that has been "hand delivered" to Plaintiff's counsel's office has arrived after 5:00 p.m.

5. The "hand-delivery" and Certificate of Service methods of Defendants' counsel, combined with his brazen violation of Local Rule 7 (A)(2) is intended to gain unfair surprise and deprive Plaintiff's counsel of the full response time required by this Court's rules.

6. Defendants' counsel has also violated Fed. R.Civ. P. 11(c)(1)(A) in <u>each</u> and <u>every</u> motion filed by Defendants' counsel, by praying for sanctions in their motions.

7. Specifically, Rule 11(c)(1)(A) requires that each motion or request for sanctions "…shall be made separately from other motions or requests…."

8. In the subject motion, Defendants' counsel has again violated Rule 11 (c)(1)(A), by including a plea for Rule 11 sanctions within his Supplementary Memorandum (See, Defendants' Memorandum, Relief Sought, Pg. 9-10.)

9. In light of the Defendants' continuous and brazen violations of this Court's rules, the Defendants' Motions and Supplementation should be stricken and/or denied.

10. The Defendants intentionally mislead this Court in their new argument which seeks to reduce the Plaintiff's Civil RICO claim to a mere shareholder dispute.

11. The Stock Purchase Agreement states that "[t]he <u>Company</u> <u>and/or</u> <u>seller</u> represents that in the event a certain real estate transaction does not occur by March 1, 2002, whereby the Company is to purchase a warehouse facility in…Tallinn, Estonia, the Company agrees that all monies tendered and paid by the buyer ($150,000) shall be fully refunded to the buyer. (emphasis added.) (See, Exhibit A, Rider to Stock Sale Agreement By and Between Atlantic Fish market, Inc. and Leon Gelfand dated January 29, 2002, ¶6.)

12. The Goldins solicited the Plaintiff and facilitated his "investment" in the RICO enterprise.

13. David Goldin, as Vice President remains actively involved in all aspects of the RICO enterprise.

14. Yelena Goldin as an active investor who first approached the Plaintiff for money, and attended various trade shows in Europe and business meetings cannot be heard to argue that she was not involved in the RICO enterprise.

15. The Rider to the Stock Purchase Agreement speaks clearly and unambiguously that the "Company" (Atlantic) was to purchase the Tallinn, Estonia real estate. There can be no dispute that the Plaintiff wired monies to Front Holding, Watkins and Atlas, in accord with the Stock Purchase Agreement, and pursuant to the Sorkin's instructions and upon the representations of the Goldins and Wynn.

16. The Goldins' representation to this Court that they "…have absolutely no relationship to the named participant entities.." and that it was by happenstance and not by via a coordinated scheme, that Gelfand wired hundreds of thousands of

dollars to these entities is absurd on its face. (See. pg. 10 of Defendant David Goldin's and Yelena Goldin's Motion to Dismiss.)

17. The Defendants cannot be heard to argue that they can somehow convert their actions, which clearly sound in fraud, to a shareholder derivative suit.

18. There can be no doubt that Atlantic, the RICO enterprise, has been used as a vehicle for fraudulent conduct and that Gelfand is not the only victim.[1]

19. Gelfand states in good faith that further discovery will reveal that the Estonia entities, Front Holding, Watkins and Atlas were in fact mere conduits used to receive funds fraudulently obtained from Gelfand.

20. Gelfand in his Complaint has clearly articulated numerous predicate acts committed by the Goldins which constitute a pattern of racketeering. See, *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 236, 239 (1985).

21. The Defendants' assertion that all "relevant books and records have been available to the Plaintiff..." is also unfounded by the facts and deliberately misleading.

22. As stated in his Complaint, Gelfand continuously requested financial documentation including the missing exhibits to the stock Purchase Agreements, and proof of Atlnatic's ownership of the Tallinn, Estonia real estate. The Defendants never produced these documents. (See, Ex. A Rider to Stock Purchase Agreement, Part IX, Exhibits.)

---

[1] It is alleged in complaints filed in this court that Sorkin and Atlantic failed to pay for a large quantity of fish shipped to Tallinn Estonia, in 2001, *H&L Axelsson v. Sorkin, et al*, Civil Docket No. 02-CV-10927-RGS and that the freight on the shipments of freight to Estonia also were not paid by Atlantic, *Eimskip et al v. Mayflower International and Atlantic Fish Market, Inc.*, 02-CV-11499-MEL. Gelfand testified on March 2, 2004 in the latter trial.

4

23. Prior to filing this Complaint, Robert C. Horgan, an attorney in good standing in Massachusetts, requested documents, including balance sheets, financial statements, a list of assets and documentation of Atlantic's purchase of the Estonia real estate.

24. As stated in the Plaintiff's Complaint, when Gelfand refused to assist Defendant Sorkin in tax fraud, Sorkin exploded in rage, telling Gelfand that he (Gelfand) owned nothing and would never received the requested documents. (See Plaintiff's Complaint, ¶57.)

25. Instead of producing documents, the Defendants and their counsel engaged in a series of evasive maneuvers.

26. First, Attorney Horgan learned that Defendant, Henry B. Wynn ("Wynn"), was not an attorney in good standing, but rather had been suspended from the practice of law. (See Ex. B, Robert C. Horgan Affidavit.)

27. Second, after being put on notice of Attorney Horgan's discovery of Mr. Wynn's status, Mr. Wynn stated in an October 9, 2003, on the letterhead "Henry B. Wynn & Associates", that Attorney Gerald J. Zyfers was counsel to Atlantic.

28. Later, on October 20, 2003, Wynn stated that Attorney Neil Marshall Brown (who now is counsel for the Goldins) represented Wynn.

29. On November 18, 2003, Attorney Brown wrote a letter to Attorney Horgan stating that Attorney Zyfers (who now represents Defendants Sorkin and Atlantic) was the "principal draftsman" of the documents, but that Wynn was working as a paralegal for Attorney John A. Zizza.[2]

---

[2] Attorney Zizza's office is located at 38 Church Street, Winchester not 270 Parson Street, Brighton, MA which is the address for Henry B. Wynn & Associates and for Atlantic Fish Market, Inc.

30. The documents requested by Attorney Horgan as outlined in his June 23, 2003, letter have never been produced. (See Ex. C, letter of Robert C. Horgan dated June 23, 2003.)

31. Curiously, Wynn in his own Supplemental Motion to Dismiss, now for the first time, characterizes himself as an "administrative assistant" for Atlantic and otherwise working under the supervision of Attorney Zizza.

32. Attorney Zyfers, who Attorney Brown states was the true corporate attorney was not permitted to supervise Wynn.[3]

33. The statements of the Defendants', and sadly those of their counsel, are not credible.

34. For the foregoing reasons, the Defendants' Motion to Dismiss should be denied.

WHEREFORE, Leon Gelfand, Plaintiff in the above-entitled action hereby respectfully requests that the Defendants' Motion to Dismiss be denied.

LEON GELFAND,

By his attorney,

Richard F. Ready, Esquire
Law Offices of Richard F. Ready
25 Walnut Street, Suite #300
Wellesley, MA 02481
(781) 239-1088
BBO #561947

---

[3] Attorney Zyfers was subject to disbarment as of August 12, 1982 and reinstated on November 30, 1998.

## **CERTIFICATE OF SERVICE**

I, Richard F. Ready, counsel for Leon Gelfand, Plaintiff, hereby certifies that a true copy of the Plaintiff's Opposition to Defendants, David Goldin's and Yelana Goldin's Motion to Submit Supplemental Memorandum to Plaintiff, Leon Gelfand's Opposition to Defendants, David Goldin's and Yelena Goldin's Motion to Dismiss has been served by mailing, first class mail, postage prepaid, to:

Neil Marshall Brown, Esquire
185 Lincoln Street
Hingham, MA 02043

Gerald J. Zyfers, Esquire
80 Clinton Place
Newton, MA 02459-1141

Henry B. Wynn
Brook House
33 Pond Avenue #1008
Brookline, MA 02446

Dated: April 21, 2004

                                                                    _/s/ Richard F. Ready_
                                                                    Richard F. Ready, Esquire
                                                                    Law Offices of Richard F. Ready
                                                                    25 Walnut Street, Suite 300
                                                                    Wellesley, MA 02481
                                                                    (781) 239-1088
                                                                    B.B.O. #561947

7

# LIST OF EXHIBITS

Case 1:03-cv-12571-PBS   Document 39   Filed 04/22/2004   Page 8 of 9

## LIST OF EXHIBITS

Exhibit A.   Rider to Stock Sale Agreement By and Between Atlantic Fish market, Inc. and Leon Gelfand dated January 29, 2002

Exhibit B.   Robert C. Horgan Affidavit – April 21, 2004

Exhibit C.   letter of Robert C. Horgan dated June 23, 2003